**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **TIFFANY MONTGOMERY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIV. ACT. NO. 1:20-cv-316-TFM-C** |
| | ) | |
| **CENTRAL LOAN ADMINISTRATION** | ) | |
| **& REPORTING, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant *M&T Bank's Motion for Summary Judgment and Brief in Support Thereof* (Doc. 59, filed July 16, 2021) and *Defendants Lakeview Loan Servicing and Central Loan Administration & Reporting's Motion for Summary Judgment* (Doc. 60, filed July 16, 2021). Plaintiff Tiffany Montgomery filed a response in opposition to each Defendants' motions for summary judgment. Docs. 66, 67. Defendants filed their replies in support of their respective motions for summary judgment. Docs. 69, 71. Having considered the motions, the responses, the replies, the evidentiary submissions in support of the motions, and relevant law, the Court finds Defendant M&T Bank's motion for summary judgment (Doc. 59) is due to be **GRANTED** and Defendants Lakeview Loan Servicing and Central Loan Administration & Reporting's motion for summary judgment (Doc. 60) is due to be **GRANTED in part and DENIED in part** for the reasons articulated below.

### I. PARTIES AND JURISDICTION

Plaintiff Tiffany Montgomery ("Plaintiff" or "Montgomery"), assert claims against Defendants Lakeview Loan Servicing, LLC ("Lakeview"), Central Loan Administration & Reporting ("CENLAR"), and Defendant M&T Bank ("M&T"). Specifically, Montgomery asserts

a claim of breach of note, mortgage and loan modification agreement (Count I) against Lakeview; a claim of Real Estate Settlement Procedures Act ("RESPA") violations (Count II) against CENLAR; claims of Fair Debt Collections Practices Act, 15 U.S.C. § 1692 ("FDCPA") violations (Counts III and IV) against CENLAR and M&T; claims of wantonness (Count V) against Lakeview, in breach of the Truth and Lending Act, 15 U.S.C. § 1600, ("TILA"); and a claim against CENLAR for violations of the Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-19-1 through 15 (1975) ("ADTPA") (Count VI).   Doc. 40.   This Court has subject matter jurisdiction over Plaintiff's federal claims and pendant state law claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 15 U.S.C. 1692k, 12 U.S.C. § 2617, and 28 U.S.C. § 1367 (supplemental jurisdiction).   The parties do not contest jurisdiction or venue, and the Court finds that sufficient support exists for both.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

On September 21, 2012, Montgomery and her then-husband David Washington[1] refinanced their home's existing mortgage by obtaining a mortgage loan in the amount of $259,490.00 (the "Loan") from Prospect Mortgage, LLC ("Prospect").   The home secured the Loan via a mortgage with a thirty (30) year term at an original fixed annual interest rate of 4.125%, monthly principal and interest payments in the amount of $1,257.65.  Doc. 40 at ¶ 11.  Pursuant to the mortgage, all payments received must be applied in the following order of priority: (1) to any mortgage insurance premiums due; (2) to any required escrow payments due; (3) to interest; and (4) to principal.   These payments must be satisfied before payments can be applied to late fees or

---

[1] David Washington is a non-party in this matter who has never signed the Loan and is not legally obligated to make payments on the Loan.  Doc. 67 at 2.

charges, including default-related charges.  *Id*. at ¶ 12.  According to the note, Prospect may not collect default-related charges, including attorneys' fees or costs, unless and until the lender has exercised its option to accelerate the debt upon default.  *Id*. at ¶ 13.  Plaintiff's mortgage was modified in July 2014.  Pursuant to the modified agreement, as of August 1, 2014, the new total principal balance owed was $203,728.94.  *Id*. at ¶ 14.  The interest rate was increased to 4.375% under a new thirty (30) year term and the new monthly principal and interest payments were $1,017.19.  *Id*.  Prior to the modification, CENLAR became the servicer of the Loan, which Prospect already considered to be in default.  On September 16, 2015, Prospect transferred its interest in the Loan to Lakeview.  *Id*. at ¶ 15 -16.

In May 2017, Plaintiff and CENLAR agreed on a second modification agreement ("the Modification").  In the Modification the parties stipulated that the principal balance owed as of June 1, 2017 was $207,337.01.  Plaintiff's monthly principal and interest payments on the Loan were lowered to $960.21, and the interest rate was lowered to 3.750%.  *Id.* at ¶ 17.  According to the Complaint, Plaintiff signed the Modification on May 12, 2017 and then returned it to CENLAR, who signed it on May 22, 2017 as Attorney in Fact for Lakeview.  *Id*. at ¶ 18.

As part of the Modification, Plaintiff and her husband executed a Correction Agreement.[2] Doc. 60 at 7.  After they executed the Modification, CENLAR submitted a claim to the Department of Housing and Urban Development ("HUD") for partial insurance proceeds pursuant to HUD's policy.  CENLAR learned that Plaintiff and her husband did not qualify for the partial claim

---

[2] Plaintiff's husband signed the Correction Agreement "solely to acknowledge [the Correction Agreement], but not to incur any personal liability for the debt."  Doc. 60-10 at 3.

because the total claim amounts exceeded HUD's program guidelines and therefore could not be processed by HUD.  *Id.*

Shortly after the Modification, Plaintiff started receiving collection calls and notices from CENLAR claiming she failed to make payments and was months behind.  Plaintiff contends that CENLAR was holding her payments in a "suspense" account and not applying them to the mortgage.  Plaintiff alleges CENLAR's failure to admit to the Modification caused CENLAR to tack on late fees and other default related charges, despite Montgomery's compliance with the mortgage.  Doc. 40 at ¶ 20.  Montgomery contacted CENLAR and discussed the problem with representatives and collectors.  Even though she provided CENLAR with a copy of the Modification, the CENLAR representatives refused to acknowledge it and insisted that Montgomery owed a total principal balance (that included interest, late charges, and other default-related late fees) far in excess of the balance stated in the Modification.  *Id.* at ¶ 21.  Consistent with the Correction Agreement, CENLAR sent Montgomery another proposed agreement with an alleged inflated balance, higher principal, and interest payment.  CENLAR allegedly insisted that Montgomery sign this proposed agreement to be deemed current, but Montgomery refused to sign the agreement and remained in default.  *Id.* at ¶¶ 22-23.  Montgomery alleges that CENLAR continued to hold her payments in suspense and subjected her to a barrage of collection calls and notices threatening foreclosure.  *Id.*  Plaintiff claims she was never provided any valid explanation about why she was being treated as in default when she complied with the modification agreement.  *Id.* at ¶ 24.  Plaintiff alleges that CENLAR used a portion of the funds she tendered to pay itself fees that it falsely claimed were owed.  Plaintiff alleges that this behavior violates the express terms of the mortgage.  *Id.* at ¶ 25.

On July 2, 2018, Plaintiff mailed and faxed two written notices to CENLAR explaining

that her payments were not being properly applied and that she was being held in default.  Plaintiff contends that the notices constitute a Notice of Servicing Error ("NOE") pursuant to 12 U.S.C. § 2605(e)[3] and properly identified the loan, borrower, and property address.   The NOE stated Montgomery's belief that a servicing error had been made and requested an investigation and correction of the account.  *Id.* ¶¶ 26-28.  Montgomery alleges that CENLAR did not meet its obligation to reasonably investigate the alleged errors, make all necessary corrections, and respond in writing within thirty (30) days.  *Id*. at ¶ 29.  Montgomery received a letter dated July 17, 2018, informing her that CENLAR transferred servicing to M&T just days after receiving the NOE.  Montgomery was instructed to direct payments to M&T beginning August 2018.  *Id*. at ¶ 30.  Plaintiff complied with the letter and began directing payments to M&T, but M&T refused to apply Plaintiff's payments in accordance with the Modification.  M&T continued CENLAR's practice of holding the payments in suspense and treating Plaintiff as in default.  *Id*. at ¶ 33.

On January 15, 2019, CENLAR responded to Plaintiff's NOE by letter.  CENLAR allegedly acknowledged that it approved the Modification but refused to acknowledge the binding effect of the agreement.  CENLAR claimed it made an error in the calculation of the amount owed stated in the Modification and therefore was unable to finalize the loan modification prior to transferring the Loan to the new servicer.  *Id.* at ¶ 35.

M&T contends that CENLAR did not implement the Modification because HUD, the investor on the Loan, rejected it.  Doc. 59 at ¶ 7.  M&T informed Plaintiff that it did not know anything about the Modification at the time servicing was transferred to M&T.  M&T was unaware of the Modification at the time it began servicing the Loan because certain documents (including

---

[3] Plaintiff's Amended Complaint incorrectly cites to 12 U.S.C. § 2505(e). *See* Doc. 40 at ¶ 27. Pursuant to 12 U.S.C. § 2605(e)(1)(B), Plaintiff's NOE meets the requirements to be considered a Qualified written request.

the Modification) were not provided to M&T allegedly due to an imaging error.  *Id*. at ¶¶ 9-10.

M&T reached out to CENLAR for the missing documentation and received it during the first year

of servicing the Loan.  *Id*. at ¶ 12.  As the mortgage servicer for the Loan, M&T collected and

applied payments on the Loan, serviced the escrow account and performed escrow analyses,

ensured property taxes were paid, ensured homeowner's insurance was obtained and paid,

monitored bankruptcies, loss mitigation, and communicated with Montgomery.  *Id*. at ¶ 15.  M&T

contacted Montgomery regarding the Loan's status to inform her of amounts that needed to be paid

to bring the Loan current.  *Id*. at ¶ 21.  M&T transferred servicing of the Loan back to CENLAR

effective on June 4, 2020.  Montgomery was informed of this transfer via a letter dated May 19,

2020.  Doc. 40 at ¶ 39.  Montgomery states that Lakeview delegated all its obligations under the

mortgage as lender to its servicing agents, CENLAR and M&T.  Among these obligations included

the duty to apply payments in accordance with the terms of the mortgagee and note as modified.

*Id*. at ¶¶ 40-41.

### B.  Procedural Background

Montgomery filed her Complaint on June 12, 2020, asserting federal claims and a state

claim against Defendants.  Doc. 1.  CENLAR filed its Answer to the Complaint on July 21, 2020.

Doc. 10.  M&T Bank and Lakeview filed their respective Answers on August 3, 2020.  Docs. 18,

19.  On January 15, 2021, Plaintiff filed an unopposed motion for leave to file an Amended

Complaint to clarify allegations plus implement stylistic and typographical changes.  Doc. 37.  The

Court granted this motion and on January 21, 2021, Montgomery filed her Amended Complaint.

Docs. 39, 40.  On February 4, 2021, all Defendants filed their respective Answers to the Amended

Complaint.  Docs. 42, 43, 44.  On July 16, 2021, M&T Bank, Lakeview, and CENLAR filed their

respective motions for summary judgment.  Docs. 59, 60.  Montgomery filed her responses in

opposition to the motions for summary judgment on August 20, 2021. Docs. 66, 67. On August 27, 2021, M&T Bank filed a reply and on September 1, 2021, Lakeview and CENLAR file their reply in support of their respective motions for summary judgment. Docs. 69, 71. The Court finds oral argument unnecessary for resolution of the instant motions. Therefore, the motions are fully briefed and ripe for adjudication.

### III.    STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). "[T]he substantive law will identify which facts are material." *Id*. at 248, 106 S. Ct. at 2510. At the summary judgment stage, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Id*. at 249, 106 S. Ct. at 2511. The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Tipton v. Bergrohr GMBH–Siegen,* 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Mize v. Jefferson City Bd. of Educ*., 93 F.3d 739, 742 (11th Cir. 1996) (citing *Hairston v. Gainesville Sun Publ'g Co*., 9 F.3d 913, 918 (11th Cir. 1993)). For factual issues to be considered genuine, they must have a real basis in the record. *Id.*

The party asking for summary judgment bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be

decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23, 106 S. Ct. at 2252. A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (internal quotations omitted) (citing *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553). The court must view facts and draw all reasonable inferences in favor of the non-moving party. *Moore v. Reese*, 637 F.3d 1220, 1231 (11th Cir. 2011) (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)). However, to avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538

(1986) (citations omitted).  Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likely insufficient to defeat a proper motion for summary judgment.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990).

## IV.   DISCUSSION AND ANALYSIS

The Court will first address M&T's motion for summary judgment (Doc. 59), then Lakeview and CENLAR's motion for summary judgment (Doc. 60). As stated in the response brief, Montgomery elects not to proceed on her claims of wantonness against Defendants in breach of TILA (Count V) and her claim against CENLAR for violations of the ADTPA (Count VI).  Doc. 67 at 28, n. 6.  The Court will not address the claims Montgomery abandons and summary judgment is granted on those claims.

### A.    M&T Bank's Motion for Summary Judgment (Count III)

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant moves this Court to grant its motion for summary judgment for Count III under FDCPA.  Plaintiff alleges that she entered the Modification with CENLAR and that both CENLAR and M&T, the Loan's subsequent servicer, failed to comply with the Modification.  Plaintiff was treated as being in default even though she claims to have complied with the Modification by making the agreed payments.  Plaintiff asserts a claim of violating the FDCPA against M&T.  Plaintiff alleges that M&T violated the FDCPA by engaging in various improper collection tactics, including allegedly collecting a debt that she did not owe and reporting false credit information about her loan to the credit bureaus.  In its motion for summary judgment, M&T argues that Plaintiff's claims cannot succeed because M&T is not a "debt collector" under the FDCPA and therefore cannot establish the threshold element of a FDCPA claim.

### 1.  Plaintiff's FDCPA claims fail because M&T is not a "Debt Collector"

M&T contends that it is entitled to summary judgment on Montgomery's FDCPA claim because M&T is not a "Debt Collector" as defined in the FDCPA.  M&T makes two arguments to support this assertion.  First, M&T argues that it is not a Debt Collector because Montgomery contends she was current on her payments when M&T began servicing the Loan.  Second, M&T argues that it is not a Debt Collector because its principal purpose is not debt collection, and it does not regularly collect debts on behalf of others.

"To assert a claim under the FDCPA, a plaintiff must establish the following elements: (1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Janke v. Wells Fargo and Co.*, 805 F. Supp. 2d 1278, 1281 (M.D. Ala. 2011); *see also Vazquez v. Prof'l Bureau of Collections of Md., Inc.*, 217 F. Supp. 3d 1348, 1351 (M.D. Fla. 2016) (stating same); *Goodreau v. US Bank Trust Nat'l Assoc.*, Civ. Act. No. 2:19-cv-00269-SGC, 2021 WL 6197821, *6, 2021 U.S. Dist. LEXIS 248010, *15 (N.D. Ala. Dec. 30, 2021) (citations omitted and reiterating elements); *Bias v. Cenlar Agency, Inc.*, Civ. Act. No. 2:15-cv-00768-SGC, 2018 WL 2365428, at * 9, 2018 U.S. Dist. LEXIS 87280, at * 25 (N.D. Ala. May 24, 2018) (quoting *Janke*).  "Any person who uses any instrumentality of interstate commerce or mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  Pursuant to U.S.C. § 1692a(6)(F)(iii), the definition of Debt Collector excludes any person "collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity…concerns a debt which was not in default at the time it was obtained by such person." *See Davidson v. Capital One Bank*

*(USA), N.A.*, 797 F.3d 1309, 1313 (11th Cir. 2015).

M&T argues that it is excluded from the Debt Collector definition because it started servicing the Loan when it was not in default. Doc. 59 at 6.   M&T reasons that Montgomery maintains in pleadings and testimony under oath that she was not in default on the Loan at the time servicing was transferred to M&T in August 2018 because she had been making all required payments pursuant to the Modification.   *Id*. at 7.   Accordingly, since the Loan was not in default M&T asserts that it is not a Debt Collector because it is exempt from the definition pursuant to § 1692a(6)(F)(iii). *See Alhassid v. Nationstar Mortg. LLC*, 771 F. App'x 965, 968 (11th Cir. 2019) ("The complaint does not allege that the debt was in default at the time it was obtained by Nationstar, and so Alhassid has not sufficiently pleaded that Nationstar is a debt collector.");[4] *Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1294 (N.D. Ala. 2013) ("Because there is no allegation Plaintiffs' debt was in default when it was assigned to Defendant (when SunTrust became the servicer), Plaintiffs cannot state an FDCPA claim against Defendant."). The Court agrees.

M&T also argues that it is not a Debt Collector because its principal purpose is not debt collection and it does not regularly collect debts on behalf of others. M&T is a mortgage loan servicer that is responsible for applying payments on the Loan, servicing the escrow account and performing escrow analyses, ensuring property taxes are paid, ensuring homeowner's insurance is obtained and paid, monitoring bankruptcies, loss mitigation, and responding to communications from Plaintiff regarding the Loan.   Doc. 59 at 11.   M&T's banking operations extend beyond just

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

mortgage loan servicing.  M&T also engages in offering checking and savings accounts, credit cards, investment accounts, and insurance advice. *Id*.  To qualify as a Debt Collector, an FDCPA defendant must fall within the statutory definition and cannot be a Debt Collector simply by virtue of acquiring a debt in default.  *Davidson*, 797 F.3d at 1314.

In Plaintiff's response brief, Montgomery argues that M&T falls within the debt collector status because (1) her mortgage was considered by Prospect to be in default when M&T acquired servicing; and (2) M&T regularly collects debts owed to another.  Plaintiff contends that CENLAR considered the loan in default when it transferred servicing to M&T.  Doc. 66 at 11. Plaintiff argues that courts have rejected the argument that the definition does not apply because Plaintiff contends the loan was not in default. Plaintiff reasons that courts have confirmed that a debt is considered in default for purposes of the FDCPA's debt collector definition when the creditor has declared or views the loan as being in default. *Id.* at 12.

As M&T correctly notes in its reply brief, Plaintiff's argument is based on out of circuit cases and therefore not binding on this Court.  Doc. 69 at 4, n. 1. Plaintiff argues that M&T is a debt collector because "as a mortgage servicer, it 'regularly collects debts owed to another,' and the subject debt considered in default when it is acquired for servicing."  Doc. 66 at 11.  M&T contends that although it did not own the Loan, it had the right to collect payments, which were made payable to M&T, on the Loan while it serviced it.  Doc. 59 at 12.  Furthermore, M&T makes an important distinction.  M&T regularly service loans that it owns, but it does not regularly collect debts on behalf of others and therefore does not satisfy the Debt Collector definition.  *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 138 (4th Cir. 2016), *aff'd*, 137 S. Ct. 1718 (2017) ("[T]he complaint's allegations also do not satisfy [the second] definition [of "debt collector"] because the debts that Santander was collecting were owed to it, Santander, not to another."); *See*

*also Birster v. Am. Home Mortg. Servicing, Inc.*, 481 F. App'x 579, 582 (11th Cir. 2012) (FDCPA plaintiff was required to show defendant satisfied the definition of "debt collector"); *Arnold v. Bayview Loan Servicing, Inc.*, Civ. Act. No. 14-0543-WS-C, 2016 WL 375154, * 13, 2016 U.S. Dist. LEXIS 10509, *47-48 (S.D. Ala. Jan. 29, 2016) ("Simply put, U.S. Bank (as trustee for the Trust) was not engaged in a business whose principal purpose was debt collection, and did not regularly collect on debts owed or due another at the time of collection. Therefore, [Plaintiff's] claims against the U.S. Bank / Trust defendant are not sustainable, as a matter of law.").

Accordingly, the Court agrees with M&T that based on the undisputed facts in the record, M&T does not satisfy the definition of Debt Collector.  For the reasons stated above, the Court finds that there is no genuine issue of material fact as to whether M&T is a debt collector. Therefore, M&T is entitled to summary judgment as to Montgomery's FDCPA claims.

### 2. Plaintiff's FDCPA claims fail on the Merits

It is clear Montgomery is unable to establish that M&T is a Debt Collector pursuant to the FDCPA definition.  Consequently, the Court does not need to analyze the merits of  Montgomery's FDCPA claims. Notwithstanding, the Court will address Montgomery's claims briefly in the alternative, because even if M&T is a Debt Collector, her claims still fail.

### a.  M&T Did Not Engage in Harassing Conduct in Violation of § 1692d

First, Montgomery alleges that M&T violated § 1692d by "engag[ing] in conduct collecting a debt, the natural consequence of which is [to] harass, oppress or abuse the Plaintiff."  Doc. 40 at ¶59(a).  Montgomery specifically alleges that M&T violated subsection § 1692d(5), which prohibits "[c]ausing a telephone to ring or engaging any person in telephone repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." *See* 15 U.S.C. § 1692d(5); Doc. 40 at ¶ 59(b).  Montgomery contends that "M&T's collectors called her on a

daily basis, including Sundays, and were unresponsive to her claims that she was in compliance with the modification." Doc. 66 at 15. Here, the record does not contain evidence of oppressive, annoying, or abusive conduct outside of the calls themselves. The calls were routine, business-like, and concerned the past due status of the Loan, none of which is enough to establish a violation of § 1692d. *Rhinehart v. Diversified Cent.*, *Inc.*, Civ. Act. No. 4:17-cv-624-VEH, 2018 WL 372312, at *10, 2018 U.S. Dist. LEXIS 5141, *25 (N.D. Ala. Jan. 11, 2018) (holding that "Plaintiff has not plausibly pled that the calls were made to harass, oppress, or abuse the Plaintiff."). Montgomery stated that she only received daily calls if she did not answer them, and otherwise received calls every two or three days. Doc. 69 at 12. "[C]ourts have generally held that one or two phone calls a day is not sufficient to state a claim" under § 1692d(5). *O'Guin v. Webcollex, LLC*, Civ. Act. No. 8:20-cv-1471-KKM-SPF, 2021 WL 34371695, at *2, 2021 U.S. Dist. LEXIS 147670, * 5 (M.D. Fla. Aug. 6, 2021).

Accordingly, the Court finds that there is no genuine issue of material fact as to whether M&T violated § 1692d as Montgomery alleges. Therefore, M&T is entitled to summary judgment as to the § 1692d claims.

### b. M&T Did Not Make Any False or Misleading Representations in Violation of § 1692e

Montgomery contends that M&T violated 15 U.S.C. § 1692(e) by using false, deceptive and misleading representations to coerce Plaintiff into paying sums not owed. Doc. 40 at ¶ 59(c). Montgomery reasons that M&T's demands for payment were false because M&T was demanding payments based on the terms of the Loan as opposed to the terms of the Modification. In response to this argument, M&T argues that it cannot be liable for failing to implement the Modification. M&T relied on the records given to it by CENLAR, the previous servicer. CENLAR did not provide the Modification to M&T when the servicing was transferred. Doc. 59 at 17-18. Based

on the record it is clear and undisputed that M&T was unaware of the Modification when it began servicing the Loan. "It is well settled that debt collectors are entitled to rely on the information they receive from creditors and are not held strictly liable when they mistakenly attempt to collect amounts in excess of what is due, if they reasonably relied on information provided by their clients." *Pratt v. I.C. Sys., Inc.*, Civ. Act. No. 05-60678-CIV, 2006 WL 8432178, * 5, 2006 U.S. Dist. LEXIS 106965, * 15 (S.D. Fla. May 10, 2006) (internal quotations and citations omitted) (granting summary judgment in favor of defendant on §§ 1692e and 1692f claims for allegedly collecting improper amount where debt collector showed that it collected amount that creditor represented to be due). Here, M&T's alleged misrepresentation of the amount due on the Loan was a consequence of relying in good faith on the records provided to it by CENLAR. Therefore, the Court finds that there is no genuine issue of material fact as to whether M&T violated § 1692e as Montgomery alleged. Therefore, M&T is entitled to summary judgment as to Montgomery's § 1692d claim.

### c. M&T Did Not Threaten to Foreclose on the Loan in Violation of § 1692e(5)

Montgomery contends that M&T violated § 15 U.S.C. § 1692e(5) by "[t]hreatening to foreclose on Plaintiff's home when such actions could not be legally taken because Plaintiff's loan was not in default." Doc. 40 at ¶ 59(d). In response, Montgomery relies on a conversation with a customer service representative who insisted that unless she agreed to rescind the Modification, M&T would place the home in foreclosure. Doc. 66 at 15. In M&T's reply, it states that Montgomery later stated that the representatives told her that her mortgage was subject to foreclosure, and she could not confirm that M&T ever said her home would be foreclosed on. Doc. 69 at 14. Accordingly, there is no genuine issue of material fact regarding Montgomery's Loan being subject to foreclosure in the event of nonpayment. The Court finds that M&T's

representatives mentioning the possibility of foreclosure is neither false nor misleading in this context.  Based on the terms of the Loan that M&T was complying with, failure to make payment would in fact put Montgomery in default and subject her Loan to foreclosure.  M&T is entitled to summary judgment as to the § 1692d claims.

### d.   M&T Did Not Credit Report on the Loan in Violation of § 1692e(8)

Montgomery alleges that M&T violated § 1692e(8) by "[r]eporting credit information to third parties, including credit bureaus, which Defendant knew or should have known was false." Doc. 40 at ¶ 59(e).  Pursuant to 15 U.S.C. § 1692e(8), a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt by "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." Plaintiff does not address this allegation in her response. M&T argues that based on the record and Plaintiff's testimony, it is undisputed that M&T never reported on the Loan and did not provide false information about her credit to the credit bureaus.  Doc. 59 at 13. The Court agrees. There is no genuine dispute of material fact as to Montgomery's § 1692e(8) claim and M&T is entitled to summary judgment on this claim.

### e.   M&T Did Not Engage in Unfair or Unconscionable Conduct in Violation of § 1692f

Montgomery alleges that M&T violated § 1692f, which prohibits the "unfair or unconscionable means to collect or attempt to collect any debt by attempting to collect amounts not owed.  Doc. 40 at ¶¶ 59(f, g).  Specifically, pursuant to § 1692f(1), "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt…[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by

law."  Montgomery's allegation is based on her belief that M&T improperly collected on the Loan based on the terms of the initial Loan as opposed to the terms of the Modification.  Doc. 59 at 20. M&T argues that these claims fail for two reasons. First, M&T contends that these claims are duplicative of Montgomery's §§ 1692e and 1692d claims because all of the claims are based on M&T allegedly collecting a debt it was not entitled. Doc. 59 at 21.  A claim under § 1692f must independently violate the section to be actionable.  *Miljkovic v. Shafritz and Dinkinm P.A.*, 791 F.3d 1291, 1308 (11th Cir. 2015) (dismissing § 1692f claim where the plaintiff failed to specify conduct that "was either unfair or unconscionable **in addition to** being abusive, deceptive, or misleading") (emphasis in original). Second, M&T contends that these claims fail because Montgomery fails to allege facts showing conduct that arises to the level of being unfair or unconscionable.   Unfair conduct is "marked by injustice, partiality, or deception," and unconscionable conduct is a "step beyond unfair" and encompasses conduct that is "shockingly unfair or unjust."  *Id*.  As stated above, it is clear that M&T did not know about the Modification at the time it began servicing the Loan because of an imaging error that occurred when the servicing was transferred.   It took CENLAR time to provide M&T with the missing documentation. The Court finds that M&T continuing to collect payments pursuant to the terms of the Loan as opposed to the Modification cannot be considered unfair or unconscionable.  For the reasons stated above, the Court finds that Montgomery's § 1692f claims fail and M&T is entitled to summary judgment on these claims.

**B.      Lakeview and CENLAR's Motion for Summary Judgment**

The Court now turns to Lakeview and CENLAR ("Defendants") motion for summary judgment (Doc. 60).  Defendants move this Court to grant their motion for summary judgment as to the following claims: breach of note, mortgage, and loan modification agreement against

Lakeview (Count I); a claim of RESPA violations against CENLAR (Count II); claims of FDCPA § 1692 violations against CENLAR (Count IV) – which Court will address in turn.

### 1.  Plaintiff's Breach of Contract Claim Against Lakeview (Count I)

Lakeview contends that Montgomery's breach of contract claim fails as a matter of law because she cannot identify any breach or damages and because she failed to abide by the Correction Agreement thereby precluding her claim.  Doc. 60 at 13.   According to Lakeview, Montgomery's claims that the amounts she was charged are improper does not prevail because she agreed to and executed the Modification.  Lakeview contends that Montgomery is unable to identify any breach of contract claim because the undisputed evidence shows that Montgomery's payments have been applied consistent with the terms of the Modification and no improper fees have been charged. *Id.* at 14.  In response, Montgomery disputes this argument as being factually flawed.  Specifically, Montgomery contends that Lakeview has failed to correctly apply all her payments in accordance with the Modification and a post suit decision to comply with the Modification does not absolve Lakeview from liability for the previous failure to abide by the agreement.  Doc. 67 at 21.  Here, the Court is not persuaded by Lakeview's argument as to Montgomery being unable to establish a breach of contract claim based on her payments not being applied properly, so it will move on to the next argument for summary judgment.

Next, Lakeview argues that Montgomery's breach of contract claim is precluded because she failed to comply with the Correction Agreement.  Doc. 60 at 15.  The Correction Agreement was implemented to correct errors in the Modification documents "regardless of the reason for any loss, misplacement, omission, misstatement or inaccuracy in any Loan documentation" in the documents.  Doc. 60-10 at 2, Correction Agreement.  The Correction Agreement provides that a correction may be needed to "enable Lender to seek insurance guaranty from the Department of

Housing and Urban Development (HUD)." Doc. 60 at 16. Here, CENLAR, was unable to collect the insurance from HUD because HUD determined that the partial claim amounts exceeded their 30% of the unpaid balance threshold for total claims. *Id*. CENLAR, as the Attorney in Fact, sent Montgomery the corrected Loan Modification but she refused to sign it. Lakeview reasons that by refusing to comply with the Correction Agreement Montgomery became liable for all loss and damage caused by her failure to comply. *Id*. at 17. The Correction Agreement plainly states:

> BORROWER LIABILITY: If Borrower fails or refuses to execute, acknowledge, initial or deliver the Requested Documents to Lender within ten (10) days after being requested to do so by Lender, Borrower understands that Lender is relying on the representations contained herein and agrees to be liable for any and all loss or damage which Lender reasonably sustains thereby including, but not limited to, all reasonable attorneys' fees and costs incurred by Lender.

Accordingly, the Court finds there is no genuine issue of material fact as to Montgomery's breach of contract claim being precluded. Therefore, Lakeview is entitled to summary judgment as to Montgomery's breach of contract claim (Count I).

### 2. Plaintiff's RESPA Claim Against CENLAR (Count II)

Pursuant to RESPA, borrowers have the right to provide a written NOE which requires the servicer to investigate the alleged error and "make appropriate corrections in the account." 12 U.S.C. § 2605(e)(1)(B)(ii) and (e)(2)(A); 12 C.F.R. § 1024.35(e). Montgomery sent CENLAR a NOE on July 2, 2018. CENLAR acknowledged the correspondence on July 17, 2018 and then sent her five follow-up letters addressing the correspondence. On January 15, 2019, CENLAR provided Montgomery with two substantive responses that addressed the issues raised in her NOE. Doc. 60 at 17. Montgomery argues that under RESPA, CENLAR was required to respond to the NOE within 30 days. This date would have been August 13, 2018, but CENLAR responded 167 days later on January 15, 2019. Doc. 67 at 26. CENLAR acknowledges that its response was not timely, despite its fifteen-business day extension. Doc. 60 at 20, n. 3. The Court finds that there

is a genuine issue of material fact as to whether CENLAR's investigation was reasonable. Accordingly, CENLAR's motion for summary judgment as to Montgomery's RESPA claim (Count II) is due to be denied.

### 3. Plaintiff's FDCPA Claim Against CENLAR (Count IV)

CENLAR contends that it is entitled to summary judgment on Montgomery's FDCPA claim because CENLAR is not a "Debt Collector" as defined in the FDCPA. Much like M&T, CENLAR argues that it is not a Debt Collector because the loan was current when CENLAR began servicing the Loan. Doc. 60 at 20. A mortgage servicer who obtains a debt when it is not in default is not a "debt collector" and is not subject to the FDCPA. *See Davidson*, 797 F.3d at 1314. ("Thus, a person who otherwise meets the definition of 'debt collector' may be excluded from the term if he obtained a debt from another, he is collecting the debt for another, and the debt was acquired prior to default."). Therefore, for the same reasons discussed more extensively in Section IV(A)(1) on M&T, the Court finds there is no genuine issue of material fact as to Montgomery's FDCPA claim against CENLAR. Accordingly, CENLAR is entitled to summary judgment as to Montgomery's FDCPA claim.

## V.   CONCLUSION

Based on the foregoing discussion and analysis, M&T Bank's motion for summary judgment (Doc. 59) is **GRANTED**. Defendants Lakeview and CENLAR's motion for summary judgment (Doc. 60) is **GRANTED in part and DENIED in part**. The motion is granted as to Counts I, IV, V, and VI. The motion is denied as to Count II. Therefore, the sole remaining claim is Count II against Defendant CENLAR.

**DONE** and **ORDERED** this the 16th day of February 2022.

s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE